James CISSELL, Trustee,
Plaintiff-Appellant,

v.

AMERICAN HOME ASSURANCE
COMPANY, Defendant-Appellee.

Nos. 75–1040, 75–1053.

United States Court of Appeals,
Sixth Circuit.

Sept. 9, 1975.

Certiorari Denied Jan. 19, 1976.
See 96 S.Ct. 857.

Robert R. Lavercombe, Cincinnati, Ohio, for plaintiff-appellant in 75–1040 and defendant-appellee in 75–1053.

David P. Faulkner, Benjamin, Faulkner & Tepe, R. Edward Tepe, Cincinnati, Ohio, for defendant-appellee in 75–1040 and plaintiff-appellant in 75–1053.

Before MILLER and LIVELY, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

WILLIAM E. MILLER, Circuit Judge.

This action was instituted by a trustee in bankruptcy seeking performance of an insurance policy issued to World Academy, a now defunct travel agency organization. The complaint sought interpretation of the policy, a declaration of rights and obligations of the parties, and instructions to the trustee in bankruptcy as to the manner in which claims of student creditors (customers of World Academy) should be presented to the bankruptcy judge.

The district court tried the case without a jury and ruled in favor of defendant on the claims of plaintiff but ruled in favor of plaintiff on certain claims and defenses of defendant raised by counterclaim.[1] Plaintiff's appeal generally raises the issue whether the district court erred in its interpretation of the insurance policy and in not submitting factual issues to a jury. On cross-appeal the defendant urges that the district court erred in finding: (1) that the plaintiff had standing to bring the action; (2) that the jurisdictional amount was present; and (3) that defendant was not discharged by virtue of the plaintiff's release of parties primarily liable.

In February 1970, defendant issued to World Academy a Travel Agents' Professional Liability Policy which provided that "the [defendant] company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay because of: . . . any negligent act, error, or omission of the insured or any person for whose acts the insured is legally liable in the conduct of travel agency operations by the named insured . . ." The policy further provided that " 'travel agency operations' means all operations necessary or incidental to the conduct of the travel agency business . . . ." The policy also carried an exclusion which provided that the "policy does not apply: . . . (p) under Coverage B [the coverage quoted above] to any liability arising out of or contributed to by . . . the inability or failure to pay or collect any money whether such . . . inability or failure be on the part of the insured or otherwise."[2]

At the beginning of July 1970, World Academy had available cash of about $300,000 and total assets of about $2,000,000. Several thousand students had begun or were ready to begin their travel in Europe when the company management decided to file in bankruptcy. After the bankruptcy petition was filed all creditors were notified that their "claims should be mailed to the referee in bankruptcy." Forms were enclosed for use by the students in making their claims. Claims from the travel agency customers and others were filed in an amount exceeding $2,300,000. In October 1970, the trustee in bankruptcy, seeking to represent the student claimants, demanded that defendant pay the student claims under the provisions of its policy.[3] This demand was rejected on the basis of non-coverage.[4]

Upon the request of the district court, plaintiff filed a list of the occurrences or omissions upon which he relied as giving rise to the liability allegedly covered by

---

1. Specifically, the district court found that the policy in question had not been obtained by fraud, that the acts of negligence of World Academy were not acts covered by the policy, that the trustee had standing to bring the suit, that the amount in controversy requirement of $10,000 was met, and that the insurance company was not relieved of any duty to pay by the fact that there was an alleged release of bankrupt's former directors who might have been primarily liable. Accordingly, both the complaint and counterclaim were dismissed.

2. Testimony was heard, however, that World Academy had stated to defendant that it want-

ed a policy to guarantee performance in the sense of assuring that customers got to Europe and back on the tours planned by World Academy. Plaintiff attempted to show that this was the protection that World Academy thought it was purchasing.

3. The student claims were amended in November 1970, increasing them by approximately $775,000. The increase represented the claims of other creditors, such as "Sport of Italy."

4. Defendant further asserted that the policy was issued as a result of fraud or misrepresentation. It accordingly tendered back the premium which had been paid.

the policy. For the purposes of its decision, the district court assumed that these events did occur, holding a bifurcated trial limited in the first instance to the meaning and construction of the policy language.

We first consider defendant's argument that the trustee has no standing to maintain the present suit. It is argued that although the trustee is appointed for the *benefit* of creditors, he represents the bankrupt and hence may not assert the claims of creditors against it.

To determine what property and rights of action pass to the trustee it is necessary to look first to the powers conferred by the Bankruptcy Act, 11 U.S.C. § 1 *et seq.* Upon his appointment, the trustee is vested with title to all the bankrupt's assets, embracing "property, including rights of action, which prior to the filing of the petition [the bankrupt] could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered" and "rights of action arising upon contracts, or usury, or the unlawful taking or detention of or injury to his property." 11 U.S.C. § 110(a).

■ As a creature of statute, the trustee in bankruptcy has only those powers conferred upon him by the Bankruptcy Act. *Imperial Assurance Co. v. Livingston,* 49 F.2d 745 (8th Cir. 1931); *In re Freedman,* 168 F.Supp. 25 (E.D. Mich.1958), *aff'd, Hertzberg v. Associates Discount Corp.,* 272 F.2d 6 (6th Cir. 1959), *cert. denied,* 362 U.S. 950, 80 S.Ct. 861, 4 L.Ed.2d 868 (1960); *Fitzgerald v. Marshall,* 161 F.Supp. 470 (D.Colo.1958); *Barnes v. Hirsch,* 215 App.Div. 10, 212 N.Y.S. 536 (1925), *aff'd per curiam,* 242 N.Y. 555, 152 N.E. 424 (1926). Under the statute the trustee steps into the shoes of the bankrupt and generally would have standing to bring any action which the bankrupt could have brought had it remained solvent. *Bayliss v. Rood,* 424 F.2d 142 (4th Cir. 1970); *Schueler v. Phoenix Assurance Co. of New York,* 223 F.Supp. 643 (E.D.Mich. 1963); *Barnes v. Hirsch,* 215 App.Div. 10, 212 N.Y.S. 536 (1925), *aff'd per curiam,* 242 N.Y. 555, 152 N.E. 424 (1926). A trustee may not sue upon claims not belonging to the estate even if they were assigned to him by creditors for convenience or other purposes. *In re Petroleum Corp. of America,* 417 F.2d 929 (8th Cir. 1969).

In ascertaining what cause of action the bankrupt in this case would have had against defendant, we must first consider the pertinent terms of the policy. It provides that "[n]o action shall lie against the company . . . until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company." The policy further provides that "[a]ny person who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy. . . . Bankruptcy or insolvency of the insured shall not relieve the company of any of its obligations hereunder."

Thus, the express language of the policy requires a judgment against the insured or a written agreement between the insured, the claimant and the insurance company, as a condition precedent to any action against the insurance company on the policy. No such judgment or written agreement has been obtained in this case.

■ Even if a judgment or written agreement had been obtained, plaintiff would have no standing to bring this action. The injured party rather than a trustee in bankruptcy has the beneficial property right in a liability policy where the terms of the policy give the injured party a right of action against the insurer after obtaining a judgment against the insured. *In re Fay Stocking Co.,* 95 F.2d 961 (6th Cir. 1938); *cf. Hanover Insurance Co. v. Tyco Industries, Inc.,* 500 F.2d 654 (3d Cir. 1974).

This case also is distinguishable from the line of cases holding that an insured has a cause of action against an insurer who, negligently or in bad faith, fails to settle a claim within the policy limits which failure results in a judgment in excess of the policy limits. *See Young v. American Casualty Co.,* 416 F.2d 906 (2d Cir. 1969), *cert. dismissed,* 396 U.S. 997, 90 S.Ct. 580, 24 L.Ed.2d 490 (1970); *Anderson v. St. Paul Mercury Indemnity Co.,* 340 F.2d 406 (7th Cir. 1965); *Moore v. United States Fidelity & Guaranty Co.,* 325 F.2d 972 (10th Cir. 1963); *Smith v. State Farm Mutual Automobile Ins. Co.,* 278 F.Supp. 405 (E.D.Tenn.1967). In those cases the insured actually suffered an injury in being subjected to excess liability. Until the insured parties have been subjected to a loss, they cannot maintain a cause of action against the insurer. *See, e. g., State Automobile Insurance Co. v. York,* 104 F.2d 730 (4th Cir. 1939). The insured party here, World Academy, has not been subjected to any final adjudication of liability. Thus, at this stage of the proceedings in bankruptcy, the trustee must assume his statutory duty of objecting to any claims which may be improper rather than assume the role of an advocate of the parties asserting those claims. 11 U.S.C. § 75.

Neither is this case controlled by cases holding that a trustee in bankruptcy has standing to sue as a representative of creditors to avoid fraudulent transfers. *See Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 410 F.2d 135 (7th Cir. 1969). In *Buttrey* the trustee asserted creditors' rights to avoid corporate transactions between the bankrupt (a securities dealer) and another securities dealer on the theory that the transactions were in fraud of bankrupt's creditors. The defendant in that case argued that only the defrauded customers could maintain the action. The Court held that the bankruptcy trustee should be permitted to maintain the action under Section 70(e) of the Bankruptcy Act, 11 U.S.C. § 110(e), which defines fraudulent transfers and specifically empowers the trustee in bankruptcy to avoid such transfers for the benefit of the bankrupt's estate.[5] It was noted that while, in a general sense, a trustee in bankruptcy stands in the shoes of the bankrupt, the Bankruptcy Act specifically vests a trustee with the right of creditors to avoid fraudulent conveyances. In the present case no such statutory right exists.

In the final analysis, whether a right of action exists in the trustee depends on whether the action vests in the trustee as an assignee for the benefit of creditors or, on the other hand, accrues to *specific* creditors. The latter is the case if the action is not in a fair sense an asset of the bankrupt which passes to the trustee. *In re Associated Oil Co.,* 289 F. 693 (6th Cir. 1923). The cause of action here sought to be asserted is for the benefit of specific creditors and is not properly maintainable by the trustee.

As the plaintiff lacked standing to sue, it is unnecessary to reach the other issues raised on appeal. The case is remanded to the district court for entry of a judgment dismissing plaintiff's complaint for the reasons herein stated and dismissing defendant's counterclaim without prejudice.

---

**5.** A similar provision, Section 60(b) of the Bankruptcy Act, 11 U.S.C. § 96(b), gives the bankruptcy court the option of preserving voidable preferences obtained by lien or security title for the benefit of the bankrupt's estate. The lien or security title preserved passes to the trustee in bankruptcy.